NO. 23-4508

# United States Court of Appeals

*for the*

# Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

– v. –

DOMINIQUE DEVONAH BRAND,

*Defendant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT FLORENCE

## OPENING BRIEF OF APPELLANT

MARIO A. PACELLA
STROM LAW FIRM, L.L.C.
6923 North Trenholm Road, Suite A
Columbia, South Carolina 29206
(803) 252-4800
mpacella@stromlaw.com

*Attorney for Defendant-Appellant*

CP COUNSEL PRESS    (800) 4-APPEAL • (809833)

## TABLE OF CONTENTS

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    Discussion and Citation to Authority. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    The District Court erred in failing to grant a judgment of acquittal
    where the competent evidence adduced at trialwas insufficient to
    establish that Appellant violated 18 U.S.C. § 1201(a)(1), 18 U.S.C.
    § 2119(3), or 18 U.S.C. § 924(j) . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . 14

        18 U.S.C. § 1201(a)(1), Kidnapping Resulting in Death. . . . . . . . . . . . 17

        18 U.S.C. § 2119(3), Carjacking Resulting in Death. . . . . . . . . . . . . . . 19

        18 U.S.C. 924(j), Using or Carrying a Firearm During
        and in Relation to a Crime of Violence Causing Murder. . . . . . . . . . . . 23

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Request for Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

i

# TABLE OF AUTHORITIES

**Cases**

*Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) . . . . . . . . 14

*Elliott v. United States*, 332 F.3d 753 (4th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Applewhaite*, 195 F.3d 679 (3d Cir. 1999). . . . . . . 19, 20, 21, 22, 23

*United States v. Bargos*, 93 F.3d 849 (4th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Bishop*, 740 F.3d 927 (4th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Childress*, 26 F.3d 498 (4th Cir. 1994). . . . . . . . . . . . . . . . . . . . . 17

*United States v. Deitz*, 443 Fed. Appx. 781 (4th Cir. 2011). . . . . . . . . . . . . . . . . . 18

*United States v. Foster*, 507 F.3d 233 (4th Cir. 2007). . . . . . . . . . . . . . . . . . . . 19, 20

*United States v. Grace*, 367 F.3d 29 (1st Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Lentz*, 524 F.3d 501 (4th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Sellers*, 62 Fed. Appx. 499 (4th Cir. 2003). . . . . . . . . . . . . . . . . . 17

**Statutes**

18 U.S.C. § 924(c)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

18 U.S.C. § 924(j). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, passim

18 U.S.C. § 1111(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, passim

18 U.S.C. § 1201(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, passim

18 U.S.C. § 2119(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, passim

18 U.S.C. § 3231. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 41. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1294(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Rules of Procedure**

Fed. R. Crim. P. 23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Crim. P. 29. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

## I.    JURISDICTION

This is an appeal from the final judgment sentencing Appellant, Dominique Brand, following a bench trial verdict of guilty for violations of 18 U.S.C. § 1201(a)(1), Kidnapping Resulting in Death, 18 U.S.C. § 2119(3), Carjacking Resulting in Death, and 18 U.S.C. § 924(j), Using or Carrying a Firearm During and in Relation to a Crime of Violence Causing Murder. During the bench trial, Appellant sought to preserve his challenge to the sufficiency of the evidence under Rules 23 and 29 of the Federal Rules of Criminal Procedure (Fed. R. Crim. P.), and the Government agreed that Appellant properly preserved the same. (J.A. 515–17, 633–34, 681–82). Following the sentencing hearing, Appellant was sentenced to two concurrent life sentences, a 120-month sentence to run consecutive to the life sentences, and five years of supervised release should Appellant ever be released. The Clerk of Court filed the Judgment in a Criminal Case on August 8, 2023. (J.A. 783–88). Appellant timely filed his Notice of Appeal on August 8, 2023. (J.A. 789). The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, as the underlying indictment alleged offenses against the laws of the United States.  Therefore, this Court has appellate jurisdiction pursuant to 28 U.S.C. §§ 41, 1291, and 1294(1).

## II.    STATEMENT OF THE ISSUES

A. Whether the District Court erred in failing to grant a judgment of acquittal where the competent evidence adduced at trial was insufficient to establish that Appellant violated 18 U.S.C. § 1201(a)(1), 18 U.S.C. § 2119(3), or 18 U.S.C. § 924(j).

1

## III.   STATEMENT OF THE CASE

On May 4, 2021, the grand jury indicted Appellant on one count of kidnapping resulting in death in violation of 18 U.S.C. § 1201(a)(1), one count of carjacking resulting in death in violation of 18 U.S.C. § 2119(3), and one count of using or carrying a firearm during and in relation to a crime of violence causing murder in violation of 18 U.S.C. § 924(j). Appellant entered a plea of not guilty. On August 3, 2022, Appellant filed a Jury Trial Waiver. (J.A. 21–22). Thereafter, Appellant confirmed his intention to proceed with a bench trial at a Pre-Trial Conference on September 1, 2022. (J.A. 43–46).

A bench trial was held before the District Court on September 7, 8, 12, and 14, 2022. During the trial, Appellant and the Government agreed that, in the context of a bench trial, Appellant's not guilty plea was the functional equivalent of a Rule 29 motion challenging the sufficiency of the evidence. (J.A. 515–17, 633–34, 681–82). Following the presentation of the evidence, the District Court found Appellant guilty on all charges.

Following a sentencing hearing, the District Court sentenced Appellant to two concurrent life-sentences for violations of 18 U.S.C. § 1201(a)(1) and 18 U.S.C. § 2119(3), and 120-months imprisonment for violation of 18 U.S.C. § 924(j) to run consecutive to the life sentences.  The District Court further sentenced Appellant to five years of supervised release should he ever be released.

Appellant timely filed a Notice of Appeal. (J.A. 789).

## IV.    STATEMENT OF THE FACTS

Mary Ann Elvington (hereinafter "Elvington") lived on a family farm just inside Horry County, South Carolina. (J.A. 72–74). Around 7:00 p.m. on Sunday, March 28, 2021, Elvington's family discovered that she was missing, parts of her home had been turned over, and her car had been taken. Walking through her house, Elvington's family noticed several things out of place, including a pizza box sticking out of the trashcan, a spent shotgun shell in Elvington's purse, and a hole in the hallway floor. (J.A. 214, 220, 221). Growing concerned, Elvington's family called her several times and, at times, Elvington could be heard stating directions to a third person or indicating the area she was in. (J.A. 215, 224–25). Elvington also told her daughter to stay at Elvington's house because she would be home shortly. (J.A. 224–25). Elvington's family then called OnStar in an attempt to locate her and the OnStar representative made contact with Elvington through her vehicle. (J.A. 81–83).

Around 10:00 or 10:15 that evening, using information obtained from OnStar, officers from the Marion County Sheriff's Office discovered Elvington's vehicle abandoned behind the Grown Folks Club in Marion County. (J.A. 144–45, 151). After the vehicle was discovered, it was processed by members of the Horry County Police Department's Crime Scene Unit. While processing the vehicle on scene, officers found a white fuse puller with a reddish substance, a block of wood with a

3

reddish substance in the driver's seat, and a reddish substance resembling pizza sauce spilled over the car's battery and fuse box. (J.A. 165, 168, 170, 173, 181).

During the course of their investigation and their attempts to locate Elvington, detectives from the Horry County Police Department became aware of a surveillance tape from Lake View Police Department. (Trial Exhibits 7 & 7A; J.A. 96–97). In the tape, a vehicle pulls up in front of the Lake View Police Department before an unidentified man gets out of the backseat, moves to the driver seat, and retrieves something from the backseat, while an unidentified woman moves from the driver's seat to the backseat. (Trial Exhibit 7 & 7A). The vehicle then made a U-turn and left the area. (Trial Exhibits 7 & 7A).

Based on information gleaned from the surveillance tape, detectives at the Marion County Sheriff's Office decided to search along Highway 41 traveling from the Dillon County line towards the city limits of Marion. (J.A. 336–38). During this search, one detective found Elvington's body behind the abandoned Zion Grocery. (J.A. 343–44). Elvington was found with a shotgun wound originating in the back-right of her head and exiting the front-left of her head. (J.A. 405–06).

At the same time officers were engaging in their search for Elvington, forensic analysts at the South Carolina Law Enforcement Division (hereinafter "SLED") were analyzing swabs taken from Elvington's home and vehicle. Upon testing the swab from the fuse puller, SLED analysts determined that presumptive testing for

blood was positive, developed a single-source DNA profile for comparison, excluded Elvington, and entered the profile in the Combined DNA Index System (hereinafter "CODIS"). (J.A. 549–51). On March 29, 2021, CODIS generated a hit identifying Appellant as a suspect. (J.A. 551, 615).

When Appellant learned that law enforcement was looking for him, he called 9-1-1 multiple times and indicated that he wished to speak to someone. (J.A. 379–80, 630). At that point, a lieutenant from the Marion County Sheriff's Office headed to Appellant's location. (J.A. 380). When the lieutenant arrived, Appellant approached him with his hands up, indicated he wanted to speak with law enforcement, and agreed to be handcuffed and taken to the Marion County Sheriff's Office. (J.A. 380–81). Upon arriving at the Marion County Sheriff's Office, Appellant was interviewed by Special Agent Vince Flamini of the FBI and ultimately arrested. (J.A. 615–16).

On April 10, 2021, one of Elvington's sons was inspecting her fields for insects and weeds. (J.A. 87). As he did so, he noticed a van parked on the other side of a cinder block house on the opposite side of the road from Elvington's home. (J.A. 75, 88). The van had previously been stolen from Little Bethel Baptist Church in Marion County and it was found stuck in the mud with boards laying behind its rear tires, its sliding door open, and multiple empty food and drink containers strewn

around the floor and seating area. (J.A. 292–93, 303–04, 318–19). Officers also found one .22 caliber bullet in the cup holder. (J.A. 292).

Thereafter, on May 4, 2021, the grand jury indicted Appellant on one count of kidnapping resulting in death in violation of 18 U.S.C. § 1201(a)(1), carjacking resulting in death in violation of 18 U.S.C. § 2119(3), and using or carrying a firearm during and in relation to a crime of violence causing murder in violation of 18 U.S.C. § 924(j). (J.A. 15–19). On August 3, 2022, Appellant filed a Jury Trial Waiver, and subsequently confirmed his intention to proceed with a bench trial at a Pre-Trial Conference on September 1, 2022. (J.A. 21–22, 43–46). A bench trial was then held before the District Court on September 7, 8, 12, and 14, 2022.

In its case in chief, the Government presented multiple witnesses who discussed the events surrounding Elvington's disappearance and the resulting investigation. Elvington's daughter, Margol Elvington, testified to finding Elvington missing from her home and her family's attempts to contact her, including a phone call between Margol's brother and Elvington in which Elvington indicated that she was fine and that her children were overprotective and tried to keep her inside too much because of COVID. (J.A. 211–12, 215, 224–25). Margol further identified the vehicle in the Lake View Police Department surveillance video as Elvington's vehicle and further identified the woman exiting the driver's seat and entering the backseat as Elvington. (J.A. 229).

Officer David McCallum of the Horry County Police Department testified that when he arrived at Elvington's residence on March 28, 2021, he did not see any signs of forced entry, mud in the house, or footprints in the home. (J.A. 242–43). Stephen Dailey, a former officer in the Horry County Police Department's Crime Scene unit, testified that he did not see any signs of forced entry at Elvington's residence, nor was he able to lift any fingerprints. (J.A. 256–57). Dailey testified about the inventory of Elvington's purse, which contained a spent shotgun shell, a bag of pizza, and glass from a picture frame. (J.A. 261–62). Dailey further described finding shotgun wadding and a pellet underneath the hole in Elvington's floor. (J.A. 267–69). Dailey also testified to swabbing items from Elvington's bedroom, including a water bottle and a jewelry box, as well as swabbing the van and items discovered within. (J.A. 273, 283, 288–91). Significantly, Dailey was unable to lift any fingerprints from the van. (J.A. 289).

Undermining his credibility, Dailey admitted that he was terminated from his position in February 2022 for violating the Horry County Police Department Code of Conduct and was found to have violated provisions of the Horry County property and evidence handling policy. (J.A. 247). Specifically, Dailey testified that while working a case in February 2022, he seized a gun, unloaded it on the scene, and failed to pick up the chambered round. (J.A. 247). Upon realizing his mistake, Dailey

stripped a round out of another magazine and labeled it as the round from the chamber. (J.A. 248).

Lieutenant Mark Collins of the Marion County Sheriff's Office testified regarding an incident occurring on Bluff Road in Marion County on March 24, 2021. (J.A. 369). Lieutenant Collins described seeing a black male riding a bicycle down the middle of the road without reflectors, a reflective vest, or a flashlight. (J.A. 369). When Lieutenant Collins attempted to make contact with the individual, the individual got off the bicycle and jumped across a ditch. (J.A. 369). Lieutenant Collins asked if the individual was ok, but the individual responded that he did not have a gun before taking off running. (J.A. 369). Following this incident, which occurred down the street from Little Bethel Baptist Church, Marion County Sheriff's Officers set up a perimeter in an attempt to catch the individual, but were ultimately unsuccessful. (J.A. 371–72). However, Lieutenant Collins testified that officers recovered a .22 caliber rifle attached to the individual's bicycle. (J.A. 372–73).

Jimmy Dean Jackson testified to owning a hunting cabin in Marion County. (J.A. 411–12). Mr. Jackson explained that around March 23 or 24, 2021, he walked into his cabin and saw the back door had been kicked in. (J.A. 413). Mr. Jackson also found that his grandson's four-wheeler, a .22 caliber rifle, a 12-gauge shotgun, food, and drinks were missing from the cabin. (J.A. 414). The pastor of Little Bethel Baptist Church, Michael Leasure, then testified regarding several break ins at his

church between August 2020 and March 25, 2021, including one in which his laptop was stolen. (J.A. 424–39). Mr. Leasure indicated that, following the March 25, 2021 break in, the keys to the church van and the van itself were missing. (J.A. 434).

Jerome De Sheers, a detective with the North Charleston Crime Unit and a task force officer with the FBI, was offered as an expert in historical cell phone data analysis. (J.A. 473). Officer De Sheers testified to the path Elvington's phone traveled on March 28, 2021, detailing how the phone traveled into North Carolina around the Lake Waccamaw area before turning around and heading back along the same route. (J.A. 482–489). Officer De Sheers further testified regarding Appellant's attempts to sell an HP Envy laptop and his internet searches related to rifles. (J.A. 495–503, 507–08).

Paul Meeh and Adrienne Hefney, a former and current SLED forensic DNA analyst, testified as experts in forensic DNA analysis. (J.A. 531–32, 594). Mr. Meeh testified regarding the swab taken from the spent shotgun shell found in Elvington's purse, indicating that it was likely Appellant and Elvington contributed to the DNA profile. (J.A. 567–69). Mr. Meeh further indicated it was likely that Appellant and Elvington contributed to the DNA profile developed from the swabs taken from the water bottle found in Elvington's home. (J.A. 573–74).

As for the pizza found in Elvington's purse, Ms. Hefney testified it was likely that Appellant and Elvington contributed to the DNA profile. (J.A. 600). Ms. Hefney

also explained that the DNA profile developed from a key recovered from the van was more likely to include Appellant and two unidentified, unrelated individuals than three unidentified, unrelated individuals. (J.A. 601–02). Additionally, Ms. Hefney tested swabs from the wood block found on the driver's seat of Elvington's vehicle and explained that it was likely that Appellant contributed to the DNA profile. (J.A. 605–06). Notably, however, Ms. Hefney testified that it was "more likely" that Appellant's DNA did not make up part of the profile developed from Elvington's steering wheel, and that Appellant's DNA was not found on the interior or exterior doors of Elvington's vehicle. (J.A. 597–99, 604).

At several points during the trial, Appellant and the Government discussed preserving Appellant's challenge to the sufficiency of the evidence presented at trial under Rule 29 of the Federal Rules of Criminal Procedure. Appellant argued to the District Court that, due to the interaction between Rule 23 and Rule 29, a formal Rule 29 motion was not necessary to preserve Appellant's challenge to the sufficiency of the evidence. (J.A. 515–16). The Government agreed, citing *United States v. Grace*,[1] for the proposition "that[,] in the bench trial context[,] the not guilty plea is the functional equivalent of a Rule 29 motion." (J.A. 516–17). Appellant reiterated his argument and understanding of the rules shortly before the Government's closing argument. (J.A. 633–34). Additionally, following both parties'

---

[1] 367 F.3d 29 (1st Cir. 2004).

closing arguments, the Government again asserted its position "that the defense has preserved its Rule 29 motion without making another one at this time as it would be duplicative given the fact that we're in a bench trial." (J.A. 681–82).

After each side had presented its case, the District Court found Appellant guilty of all three charges, provided its findings of fact, and explained its reasoning. (J.A. 700–01). As for the Kidnapping Resulting in Death charge, the District Court explained that Appellant "unlawfully kidnapped, abducted and carried away [Elvington] when he forced her to leave her home and drive him to Lake Waccamaw, North Carolina and then back into South Carolina." (J.A. 711). The District Court found that Appellant unlawfully held Elvington at three different points: (1) after they left Elvington's house and Appellant forced her to drive to North Carolina, (2) when Elvington pulled her car over in Lake View and Appellant got into the driver's seat and made a U-turn, and (3) at the Zion Grocery when Appellant removed Elvington from her car, walked her around to the back of the building, and shot her. (J.A. 712). Furthermore, the District Court determined Appellant received a benefit from the kidnapping because he needed transportation and her car. (J.A. 712). Finally, the District Court determined that Elvington was transported in interstate commerce because Appellant forced her to drive to Lake Waccamaw, North Carolina and back to South Carolina, and that Appellant's actions resulted in the death of Elvington. (J.A. 712–13).

In reaching its conclusion on the Carjacking Resulting in Death charge, the District Court found that Appellant engaged in three distinct takings: (1) when he forced Elvington to leave her home in her car, (2) in Lake View when Elvington pulled over and Appellant took over the driver's seat, and (3) at the Zion Grocery when Appellant removed Elvington from her car, shot her, and then drove away in her vehicle. (J.A. 714–15). The District Court found that Appellant took the vehicle from Elvington's person or presence. (J.A. 715). The District Court determined the interstate commerce element was satisfied in two ways: (1) Appellant and Elvington traveled from South Carolina to Lake Waccamaw, North Carolina and back, and (2) Elvington's vehicle was manufactured in Kansas and transported to South Carolina. (J.A. 715). Additionally, the District Court found that Appellant's first two takings were accomplished by intimidation, while the third taking was accomplished by force. (J.A. 716). As for Appellant's intent to harm or kill Elvington when he took control of the vehicle, the District Court found this element was satisfied because Appellant carried a shotgun and ultimately used it. (J.A. 716). Lastly, the District Court found that each of the takings resulted in Elvington's death. (J.A. 717).

Turning to the charge of Using or Carrying a Firearm During and In Relation to a Crime of Violence Causing Murder, the District Court found the evidence presented demonstrated that (1) Appellant used or carried a firearm, (2) Appellant used or carried that firearm during and in relation to the carjacking resulting in death

12

charged in Count 2 of the indictment, and (3) Appellant used the firearm to cause Elvington's death by shooting her in the back of the head at close range with a shotgun. (J.A. 717–18). The District Court further found the killing constituted first degree murder under 18 U.S.C. 1111. (J.A. 718).

Thereafter, Appellant's sentencing hearing was held on August 3, 2023. (J.A. 727–82). Following the hearing, the District Court sentenced Appellant to two concurrent life-sentences for violations of 18 U.S.C. § 1201(a)(1) and 18 U.S.C. § 2119(3), and 120-months imprisonment for violation of 18 U.S.C. § 924(j) consecutive to the life sentences. (J.A. 762). The District Court further sentenced Appellant to five years of supervised release should he ever be released. (J.A. 762).

This appeal followed.

## V.      SUMMARY OF THE ARGUMENT

Appellant contends that the evidence produced at trial, even viewed in the light most favorable to the Government, was insufficient for the District Court to find Appellant guilty of each charge. Initially, Appellant asserts that while the Government offered circumstantial evidence, it failed to produce sufficient evidence directly tying Appellant to the crimes charged. Appellant further argues that the Government (1) failed to put forth evidence demonstrating Elvington's lack of consent in relation to the Kidnapping charge, (2) failed to put forth evidence establishing the requisite intent on the part of Appellant in relation to the Carjacking

charge, and (3) failed to establish that Appellant possessed a weapon during the commission of a crime prosecutable in a United States Court in relation to the Using or Carrying a Firearm During and in Relation to a Crime of Violence Causing Murder charge.

## VI.    ARGUMENT

### a.  Standard of Review

"In assessing the sufficiency of the evidence presented in a bench trial, [appellate courts] must uphold a guilty verdict if, taking the view most favorable to the Government, there is substantial evidence to support the verdict." *Elliott v. United States*, 332 F.3d 753, 761 (4th Cir. 2003). "[I]n the context of a criminal action, substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Bargos*, 93 F.3d 849, 862 (4th Cir. 1996).  Thus, an appellate court should reverse a conviction on sufficiency grounds "where 'the prosecution's failure is clear.'" *United States v. Bishop*, 740 F.3d 927, 935 (4th Cir. 2014) (quoting *Burks v. United States*, 437 U.S. 1, 17, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)).

### b.  Discussion and Citation to Authority

**1.  The District Court erred in failing to grant a judgment of acquittal where the competent evidence adduced at trial was insufficient to establish that Appellant violated 18 U.S.C. § 1201(a)(1), 18 U.S.C. § 2119(3), or 18 U.S.C. § 924(j).**

14

Initially, Appellant contends that the evidence presented at trial was insufficient to connect him to any of the crimes alleged in the indictment. The Government's case relied heavily on circumstantial evidence, as acknowledged by the Government at trial, and there were significant gaps in the evidence creating reasonable doubt. (J.A. 680). Notably, there were no witnesses who could put Appellant and Elvington together, no witnesses who could put Appellant in Elvington's vehicle, and no witnesses who saw Appellant with a shotgun. Additionally, there was no evidence presented connecting Appellant to the "tools" of the alleged crime. Officers did not find the shotgun used to kill Elvington when they searched Appellant's house or at any point during the investigation, nor did they find Appellant's fingerprints or DNA on Elvington's steering wheel, gear shifter, or vehicle doors. (J.A. 597–99, 604). As an additional point regarding the shotgun, there was no evidence linking Appellant to the break in at Jimmy Dean Jackson's cabin on the night his shotgun was stolen, and Appellant was notably not in possession of Jackson's stolen four-wheeler. Appellant's shoes similarly did not match the shoe impressions left at the scene where Elvington's body was found. (J.A. 618–19). Furthermore, the surveillance video from the Lake View Police Department did not definitively reveal Appellant to be the person in the vehicle with Elvington, nor did it definitively show that the man was wielding a shotgun. (Trial Exhibits 7 & 7A).

15

Several other factors lead to the conclusion that Appellant was not involved in the crimes alleged. The Government did not present any data from Appellant's cell phone demonstrating that he traveled to North Carolina with Elvington. Moreover, upon discovering that law enforcement was searching for him, Appellant immediately contacted 9-1-1 and turned himself in. (J.A. 379–81, 630). During his interaction with Special Agent Flamini, Appellant demonstrated that he was a heavy smoker who struggled to get through his interview without asking for a smoke break. (Trial Exhibit 88). However, there was no evidence that cigarettes or cigarette butts were found at any of the crime scenes, nor was any evidence presented that Elvington's car smelled of cigarette smoke. Crucially, the Government also failed to provide any evidence demonstrating a motive or rationale explaining why Appellant would demand to be driven to North Carolina and back. As such, there are significant gaps in the record that create reasonable doubt regarding whether Appellant was involved in the acts of traveling with Elvington to North Carolina and back or involved in shooting her.

In addition to the factual gaps discussed above, Appellant's conviction is also reversible because the Government failed to establish specific elements for each crime that are required to produce convictions. As will be demonstrated below, assuming arguendo that Appellant was involved with the incident involving the alleged crimes, the Government failed to establish (1) Elvington's lack of consent

16

necessary for the kidnapping charge, (2) Appellant's intent necessary for the carjacking charge, and (3) a crime prosecutable in a United States Court regarding the weapon charge.

## A. 18 U.S.C. § 1201(a)(1), Kidnapping Resulting in Death.

Pursuant to 18 U.S.C. § 1201(a)(1),

> Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person . . . when-- the person is willfully transported in interstate or foreign commerce . . . or the offender travels in interstate or foreign commerce or uses . . . any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

Thus, to obtain a conviction under the statute, the Government is required to prove "(1) that the victim was seized, confined, inveigled, decoyed, kidnapped, abducted or carried away; (2) that the victim was held; (3) that the victim was transported interstate; and (4) that death resulted." *United States v. Lentz*, 524 F.3d 501, 512 (4th Cir. 2008). Crucially, to obtain a conviction for kidnapping, the Government is required to prove that the defendant transported the victim "across a state line *and did so without her consent*." *United States v. Childress*, 26 F.3d 498, 502–03 (4th Cir. 1994) (emphasis added); *see also United States v. Sellers*, 62 Fed. Appx. 499, 502 (4th Cir. 2003) ("Because the seizure and detention must be involuntary, consent by the victim establishes a defense to kidnapping."). Additionally, "[s]ubsection

17

(a)(1)'s requirement of willful interstate transportation is one of the 'separate federal jurisdictional bases for' the substantive crime." *United States v. Deitz*, 443 Fed. Appx. 781, 788 (4th Cir. 2011).

Assuming arguendo that Appellant was the man who traveled to North Carolina with Elvington, the Government failed to establish that Elvington was forced to travel to North Carolina with Appellant against her will. The District Court found that Elvington did not voluntarily travel with Appellant because Appellant possessed a shotgun. However, there was no evidence presented demonstrating that Appellant was wielding a shotgun prior to traveling with Elvington, that he threatened Elvington with a shotgun, or that he threatened to use a shotgun against the Elvington.  Moreover, in the Lake View surveillance video, the male, who was not identified as Appellant, is seen retrieving something from the backseat, but it is not clear that it is a shotgun, and he is not seen pointing it at Elvington or otherwise threatening her with it. (Trial Exhibits 7 & 7A). There is similarly deficient evidence regarding whether Elvington was forced to walk behind the Grown Folks Club against her will.

Additionally, several factors suggest that Elvington accompanied Defendant voluntarily.  First, when Elvington's son first called her, Elvington told her son that she was fine. (J.A. 211). Second, on multiple phone calls with Elvington's daughter, Elvington could be heard discussing instructions and travel locations with another

person, further indicating that she would return home. (J.A. 215, 224–25). Third, on the Lake View surveillance video, Elvington initially tried to enter the front passenger seat alongside the male driver before ultimately sitting in the back seat. (Trial Exhibits 7 & 7A). These factors establish reasonable doubt as to whether Elvington was forced to travel against her will and actually may have agreed to drive Appellant to North Carolina and back.

Thus, because the Government failed to establish that Elvington was forced to travel with Appellant against her will, Appellant's conviction for kidnapping should be reversed.

### B. 18 U.S.C. § 2119(3), Carjacking Resulting in Death.

Pursuant to 18 U.S.C. § 2119(3),

> Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

Thus, to obtain a conviction under the statute, the Government must prove that the defendant "(1) with intent to cause death or serious bodily harm (2) took a motor vehicle (3) that had been transported, shipped or received in interstate or foreign commerce (4) from the person or presence of another (5) by force and violence or intimidation." *United States v. Foster*, 507 F.3d 233, 246–47 (4th Cir. 2007) (quoting *United States v. Applewhaite*, 195 F.3d 679, 685 (3d Cir. 1999)). Notably, "[t]he

19

intent requirement of § 2119 is satisfied when the government proves that, *at the moment the defendant demanded or took control of the vehicle*, the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car." *Id*. at 247 (emphasis added).

In *United States v. Applewhaite*, the Third Circuit reversed a defendant's conviction upon finding that the Government had not established the required scienter element. 195 F.3d at 685–86. The Third Circuit explained that, "[a]lthough the defendants clearly intended to seriously harm or kill [the victim], neither their evil intent, nor the force they employed in furtherance of it, had any nexus to the subsequent taking of his van." *Id*. at 685. While the Third Circuit conceded that it was "uncontested that [the victim's] van was taken after he was violently assaulted[,]" it explained that this conclusion did "not establish that the force was used to get control of his van." *Id*. The Third Circuit found that "[e]ven when th[e] record is viewed in the light most favorable to the government, it is clear that the prosecution failed to establish the required nexus between the assault and the taking." *Id*. "Rather, the record establishe[d] that the van was taken as an afterthought in an attempt to get [the victim]'s limp body away from the crime scene." *Id*. The Third Circuit further explained that "[i]t simply ma[de] makes no sense to suggest that [the victim] was assaulted so that the defendants could transport his body away from [the scene.]" *Id*. at 686. Instead, "the force was used solely for

20

the purpose of bludgeoning [the victim]. That was the object of the assault." *Id*. Moreover, "[i]t was not the means of stealing his car. After defendants accomplished their objective, they dragged [the victim]'s unconscious body to his car, and drove away." *Id*. Accordingly, the Third Circuit ultimately concluded that, "unless the threatened or actual force is employed in furtherance of the taking of the car, there is no carjacking within the meaning of 18 U.S.C. § 2119." *Id*.

Assuming arguendo that Appellant was the man who traveled to North Carolina with Elvington, the Government failed to demonstrate that he had the specific intent required under the Carjacking statute. Regarding the first taking identified by the District Court, there is simply no evidence demonstrating that Appellant possessed the intention to kill or seriously injure Elvington if necessary to take control of her vehicle. The evidence failed to demonstrate that Appellant threatened Elvington or attempted to harm her before the two traveled to North Carolina and back. While the Government alleges that Appellant was carrying a shotgun, there is no evidence that Appellant was wielding such a weapon prior to traveling with Elvington, that he ever pointed it at Elvington, or that he threatened her with it. Further, as discussed above, there is insufficient evidence to conclude that Appellant forced Elvington to travel to North Carolina and back against her will.

As to the second taking, there is similarly insufficient evidence demonstrating that Appellant had the requisite intent when he entered the front seat of the vehicle.

21

While the Government argued that Appellant was armed with a shotgun, it is not clear from the Lake View Police Department's surveillance video that the unidentified male was actually armed. (Trial Exhibits 7 & 7A). Even if the unidentified male was carrying a shotgun, he is not seen pointing it at Elvington or threatening Elvington with it at the time they switched seats. (Trial Exhibits 7 & 7A). Moreover, as previously mentioned, Elvington originally went to sit in the passenger seat alongside the unidentified male before sitting in the back seat. (Trial Exhibits 7 & 7A). Additionally, Elvington is not seen attempting to obtain assistance from other drivers in the area or the Lake View Police Department. (Trial Exhibits 7 & 7A).

Finally, as the third taking, the force allegedly used by Appellant against Elvington is similar to that discussed in *Applewhaite* in that it was not used to get control of Elvington's vehicle. Like the defendants in *Applewhaite*, a person shot Elvington for the sole purpose of killing her, but it was not the means of taking her vehicle. Rather, someone took Elvington's vehicle as an afterthought in an attempt to dispose of the evidence. In *Applewhaite*, the Third Circuit concluded that it did not make sense to suggest the defendants killed the victim so that they could transport his body away. Here, it similarly does not make sense that someone would kill Elvington for the sole purpose of hiding the vehicle at a separate location. Thus, the evidence presented at trial "failed to establish the required nexus between the assault and the taking." *Applewhaite*, 195 F.3d at 685. As such, because "actual force

22

[was not] employed in furtherance of the taking of the car, there is no carjacking within the meaning of 18 U.S.C. § 2119[,]" *id.* at 686, and Appellant's conviction should be reversed.

### C. 18 U.S.C. 924(j), Using or Carrying a Firearm During and in Relation to a Crime of Violence Causing Murder.

Pursuant to 18 U.S.C. § 924(j)(1), a party who, "in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life." Under 18 U.S.C. § 924(c)(1)(A), it is a violation for a person, "during and in relation to any crime of violence or drug trafficking crime . . . *for which the person may be prosecuted in a court of the United States*, [to] use[] or carr[y] a firearm, or [], in furtherance of any such crime, [to] possess[] a firearm." (emphasis added). Finally, 18 U.S.C. § 1111(a) defines "Murder" as "the unlawful killing of a human being with malice aforethought." The statute further provides that "[e]very murder perpetrated by . . . any []kind of willful, deliberate, malicious, and premeditated killing; . . . or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree."

At trial, the District Court found that Appellant was guilty of violating 18 U.S.C. § 924(j)(1) because he used and possessed a shotgun in furtherance of a carjacking prosecutable under the federal carjacking statute. As previously

discussed, there is insufficient evidence to establish that Appellant was the person involved in the alleged crimes, as neither his DNA nor his fingerprints were found in the interior or exterior of Elvington's vehicle. Additionally, there is not sufficient evidence that Appellant was in possession of a shotgun, as no such weapon was ever recovered and there was insufficient evidence to connect Appellant to the robbery at Jimmy Dean Jackson's cabin.

Assuming arguendo that Appellant was accurately identified as the perpetrator of Elvington's shooting, his conviction under 18 U.S.C. § 924(j)(1) must be reversed because the Government has failed to prove the jurisdictional prong. As mentioned above, the Government failed to demonstrate that Elvington was taken to North Carolina against her will as required by the federal kidnapping statute, or that Appellant possessed the requisite criminal intent to produce a conviction under the federal carjacking statute. Thus, the Government cannot satisfy the jurisdictional requirement that the use or possession of a firearm occurred during an in relation to a crime of violence prosecutable in a United States Court. Accordingly, Appellant's conviction under 18 U.S.C. § 924(j)(1) should be reversed.

## VII.  CONCLUSION

For the above reasons, Appellant's conviction and sentence should be vacated and remanded for a new trial.

## VIII.  REQUEST FOR ORAL ARGUMENT

Appellant requests oral argument.

RESPECTFULLY SUBMITTED, this 21st day of December, 2023.


/s/Mario A. Pacella
Mario A. Pacella
STROM LAW FIRM, LLC
6923 N. Trenholm Rd., Suite 200
Columbia, South Carolina 29206
Tel:    803.252.4800
Fax:   803.252.4801
mpacella@stromlaw.com

*Attorney for Appellant*

25

## CERTIFICATE OF COMPLIANCE

Pursuant to F.R.A.P. 32(a)(5)(A) and (7)(B), undersigned counsel hereby certifies that this Brief is typed in 14-point Times New Roman proportionally spaced font; and this Brief complies with the type-volume limitations of F.R.A.P. 32(a)(7)(B)(i), containing 6,037 words, excluding those sections of the Brief that do not count towards that limitation, which was determined by the Microsoft Word program used to prepare this Brief.

Respectfully submitted,

/s/Mario A. Pacella
Mario A. Pacella
STROM LAW FIRM, LLC
6923 N. Trenholm Rd., Suite 200
Columbia, South Carolina 29206
Tel:   803.252.4800
Fax:   803.252.4801
mpacella@stromlaw.com

*Attorney for Appellant*

December 21, 2023

## CERTIFICATE OF SERVICE

This is to certify that I have this day caused a true and correct copy of the foregoing **Brief of Appellant Dominique Brand** to be served via ECF notification upon the following:

> Katie Stoughton
> U.S. Attorney's Office
> District of South Carolina
> 1441 Main St., Suite 500
> Columbia, South Carolina 29201
> *Counsel for the United States*

> /s/Mario A. Pacella
> Mario A. Pacella
> STROM LAW FIRM, LLC
> 6923 N. Trenholm Rd., Suite 200
> Columbia, South Carolina 29206
> Tel:   803.252.4800
> Fax:   803.252.4801
> mpacella@stromlaw.com

> *Attorney for Appellant*

December 21, 2023