# NO. 23-4508

# United States Court of Appeals
## *for the*
# Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

– v. –

DOMINIQUE DEVONAH BRAND,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT FLORENCE

## **REPLY BRIEF OF APPELLANT**

MARIO A. PACELLA
STROM LAW FIRM, L.L.C.
6923 North Trenholm Road, Suite A
Columbia, South Carolina 29206
(803) 252-4800
mpacella@stromlaw.com

*Attorney for Defendant-Appellant*

CP COUNSEL PRESS    (800) 4-APPEAL • (809833)

# TABLE OF CONTENTS

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Responsive Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    The Government cannot establish that Appellant stole or possessed
    the murder weapon. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    Appellant's argument as to the kidnapping charge encompasses both
    consent and interstate transportation elements. . . . . . . . . . . . . . . . . . . . . . 5

    The Government misapprehends Appellant's argument concerning
    *United States v. Applewhaite*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

**Cases**

*Chatwin v. United States*, 326 U.S. 455 (1946). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Applewhaite*, 195 F.3d 679 (3d Cir. 1999). . . . . . . . . . . . . . . . . 9, 11

*United States v. Childress*, 26 F.3d 498 (4th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Deitz*, 443 Fed. Appx. 781 (4th Cir. 2011). . . . . . . . . . . . . . . . . . . 6

*United States v. Foster*, 507 F.3d 233 (4th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Hughes*, 716 F.2d 234 (4th Cir. 1983). . . . . . . . . . . . . . . . 6, 7, 8, 9

*United States v. Lentz*, 524 F.3d 501 (4th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Lewis*, 662 F.2d 1087 (4th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Sellers*, 62 Fed. Appx. 499 (4th Cir. 2003). . . . . . . . . . . . . . . . . . 8

*United States v. Solice*, 332 F.2d 626 (4th Cir. 1964). . . . . . . . . . . . . . . . . . . . . 7–8

*United States v. Wills*, 346 F.3d 476 (4th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . 8

**Statutes**

18 U.S.C. § 924(j). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 1201(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, passim

18 U.S.C. § 2119(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

I. **INTRODUCTION**

Appellant challenges his conviction arguing the evidence produced at trial, even viewed in the light most favorable to the Government, was insufficient for the District Court to find Appellant guilty of 18 U.S.C. § 1201(a)(1), Kidnapping Resulting in Death, 18 U.S.C. § 2119(3), Carjacking Resulting in Death, or 18 U.S.C. § 924(j), Using or Carrying a Firearm During and in Relation to a Crime of Violence Causing Murder. Without restating the issues or readvancing arguments which have been thoroughly set forth in his opening brief, Appellant offers the following points of clarification and rebuttal to the arguments raised by the Government.

II. **RESPONSIVE FACTS**

Appellant reiterates and reincorporates the facts of his opening brief as if restated herein, but emphasizes the facts below in response to assertions made in the Government's Brief. Notably, the Government asserts that the shotgun used to murder Mary Ann Elvington (hereinafter "Elvington") was stolen by Appellant during the robbery of Dean Jackson's hunting club on March 23 or 24, 2021. (Gov't Br. at 2). However, the evidence presented, including the testimony of Lieutenant Mark Collins, was insufficient to establish Appellant's participation in that crime or possession of the stolen shotgun.

Assuming arguendo that Appellant was the man encountered by Lieutenant Collins, Lieutenant Collins testified that he stopped to make contact with him after

1

seeing him riding a bicycle down the middle of the road without reflectors, a reflective vest, or a flashlight. (J.A. 369). Lieutenant Collins described the man as having facial hair and noted that his "hair was bushy because he had a hoody." (J.A. 369–70). Lieutenant Collins further indicated the man "was carrying a backpack-bookbag kind of, and it was a light blue or purplish-looking color. And that was it." (J.A. 370). When Lieutenant Collins attempted to make contact with the man, the man got off the bicycle, jumped across a ditch, and professed that he did not have a gun before fleeing the scene. (J.A. 369). After Lieutenant Collins and fellow officers failed to find the man, they found a .22 caliber rifle attached to his bicycle. (J.A. 372–73). However, notably absent from Lieutenant Collins's testimony was any reference to the missing shotgun. Lieutenant Collins did not testify to seeing the man holding a shotgun or indicate that it looked like the man possessed a shotgun in his backpack. Moreover, there was no indication that Dean Jackson's hunting club was burglarized a second time following Lieutenant Collins's encounter with the man on the bike.

The shotgun was not the only item stolen from Dean Jackson's hunting club that was unaccounted for at the time of trial, as Mr. Jackson testified that a four-wheeler was stolen from the cabin and there was no indication that the same was ever recovered. (J.A. 414). Additionally, while the Government asserts that missing food and a .22 caliber bullet were found in the missing church van, there were no

2

shotgun shells found in the van nor was the missing shotgun ever recovered. As such, the Government has never established how many people were involved in the robbery at Dean Jackson's hunting club, that Appellant participated in the robbery, or who stole the shotgun and the four-wheeler.

## III.  ARGUMENT

### a) The Government cannot establish that Appellant stole or possessed the murder weapon.

In response to Appellant's argument that the evidence presented at trial was insufficient to connect him to the crimes alleged, the Government asserted, *inter alia*, that the evidence established Appellant as the individual who stole the murder weapon from Dean Jackson's hunting club. However, the evidence is insufficient to establish that Appellant ever possessed the weapon.

At the outset, Lieutenant Collins's testimony failed to establish that Appellant was the man he encountered on the bike on March 23 or 24, 2021. Lieutenant Collins's described the man as a black male of average height with facial hair and a hoodie. (J.A. 369–70). Other than these generic descriptors, Lieutenant Collins did not testify to any features or identifiers that were consistent between the man and Appellant.

Crucially, while Lieutenant Collins testified that a .22 caliber rifle was recovered off the man's bike, he offered no testimony as to whether the man possessed the stolen shotgun or the food and drinks stolen from Dean Jackson's hunt

3

club. While Lieutenant Collins did testify that the man was holding a backpack, he did not testify that it appeared that the man had a shotgun in his backpack, or even that the backpack looked to be filled with small items, such as food items. Accordingly, it is not clear whether Appellant stole the food items or whether he was given the same.

Additionally, other factors cast doubt on whether Appellant ever possessed the shotgun. Notably, Appellant's internet searches do not support that he was in possession of the missing shotgun. The Government is quick to point out that Appellant was engaging in internet searches regarding rifles like the one stolen from the hunting club, but offered no testimony or evidence that Appellant was similarly engaging in searches related to shotguns. Moreover, despite Dean Jackson's testimony that he had multiple boxes of shells at his hunting club,[1] the Government did not present any evidence or testimony demonstrating that Appellant possessed these shells, that any shells were found in the church van, or that any shells were found at Appellant's residence. (J.A. 417).

Furthermore, Dean Jackson testified that whoever burglarized his hunting club had also stolen a four-wheeler. (J.A. 414). However, the Government does not address this fact in concluding that Appellant was the party who robbed the hunting

---

[1] Additionally, when asked whether he owned any number 5 shot shells, the same type used in Elvington's murder, Dean Jackson responded, "Not that I can recall." (J.A. 417).

4

club cabin. Notably, the man Lieutenant Collins encountered following the robbery was riding a bike. There is no possible way that the man could have transported the four-wheeler without riding it away from the cabin or transporting it in a vehicle. As such, it is likely that another individual participated in the burglary and stole the four-wheeler. If it is likely that another individual stole the four-wheeler, it is similarly likely that another individual stole the shotgun.

Ultimately, the lack of testimony as to whether the man on the bike possessed a shotgun and the inability to rule out multiple parties participating in the burglary of Dean Jackson's cabin creates reasonable doubt as to whether Appellant ever possessed the murder weapon.

### b) **Appellant's argument as to the kidnapping charge encompasses both consent and interstate transportation elements.**

The Government asserts that Appellant only challenged the sufficiency of the evidence as to one element, specifically whether Appellant held Ms. Elvington against her will. However, Appellant's argument also encompasses the jurisdictional element of the statute. (App.'s Br. at 17–19). Appellant cited case law establishing the same in his opening brief and specifically argued that Appellant did not take Elvington to North Carolina and back against her will.

To obtain a conviction under 18 U.S.C. § 1201(a)(1), the Government is required to prove "(1) that the victim was seized, confined, inveigled, decoyed, kidnapped, abducted or carried away; (2) that the victim was held; (3) that the victim

5

was transported interstate; and (4) that death resulted." *United States v. Lentz*, 524 F.3d 501, 512 (4th Cir. 2008). "Subsection (a)(1)'s requirement of willful interstate transportation is one of the 'separate federal jurisdictional bases for' the substantive crime." *United States v. Deitz*, 443 Fed. Appx. 781, 788 (4th Cir. 2011); *see also United States v. Lewis*, 662 F.2d 1087, 1090 (4th Cir. 1981) ("[Section] 1201(a) as amended creates a single crime with four jurisdictional bases rather than four different crimes."). As such, "[t]o sustain a conviction for kidnapping in violation of 18 U.S.C. § 1201(a)(1), the government [i]s required to prove that [the defendant] transported [the victim] across a state line *and* did so without her consent." *United States v. Childress*, 26 F.3d 498, 501–02 (4th Cir. 1994) (emphasis added); *see also Chatwin v. United States*, 326 U.S. 455, 460 (1946) ("[T]he broadness of the statutory language does not permit us to tear the words out of their context, using the magic of lexigraphy to apply them to . . . situations lacking the involuntariness of seizure and detention which is the very essence of the crime of kidnaping.").

The Fourth Circuit has held "[t]he legislative history is clear that the 1972 amendments, in expanding jurisdiction, *did not alter the established requirement that the criminal activity precede the interstate movement*." *United States v. Hughes*, 716 F.2d 234, 238 (4th Cir. 1983). Thus, "federal policy is not furthered . . . by permitting federal jurisdiction over a wholly intrastate kidnapping simply because during some relevant time period prior to the kidnapping the eventual offender and

6

his victim crossed a state line." *Id*. Rather, "[s]uch a situation involves no attempt to escape the jurisdiction in which the offense occurred, and, therefore, it provides no reason for departing from the long established framework of federalism that allocates to the states the primary responsibility for prosecuting kidnapping violations." *Id*.

In reaching its verdict, the District Court determined Appellant engaged in three separate "holdings" against Elvington: (1) when Elvington drove Appellant to North Carolina and back; (2) when Appellant switched seats with Elvington in front of the Lake View Police Department and drove away; and (3) when Appellant got Elvington out of the car and walked her around the back of the Grown Folks Club. (J.A. 712). The failure to establish that Elvington was taken to North Carolina against her will is fatal to the kidnapping charge, as the Government cannot establish all of the elements for the first "holding," and there is no federal jurisdiction for the second and third "holdings."

As argued in Appellant's opening brief, in regard to the first holding, the Government failed to establish that that Elvington was forced to travel to North Carolina with Appellant against her will. While the Government argues that Appellant held Elvington at gunpoint, there is simply no evidence in the record demonstrating that Appellant ever threatened Elvington or pointed a gun at her. Any conclusion to the contrary is speculative. *See United States v. Solice*, 332 F.2d 626,

7

628 (4th Cir. 1964) ("[N]o conviction may stand upon mere speculation."). Furthermore, Appellant cited relevant factors demonstrating that Elvington may have accompanied Appellant voluntarily. Thus, because the Government cannot establish that Elvington was taken to North Carolina against her will, the first "holding" cannot sustain Appellant's conviction. *See United States v. Sellers*, 62 Fed. Appx. 499, 502 (4th Cir. 2003) ("Because the seizure and detention must be involuntary, consent by the victim establishes a defense to kidnapping.").

Moreover, because the Government cannot demonstrate that Elvington did not accompany Appellant to North Carolina and back voluntarily, any subsequent "holdings" are outside the scope of the federal kidnapping statute. *See United States v. Wills*, 346 F.3d 476, 488 (4th Cir. 2003) ("Kidnapping . . . begins the moment that the victim is unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away."); *see also Hughes*, 716 F.2d at 238 ("[T]he 1972 amendments . . . did not alter the established requirement that the criminal activity precede the interstate movement."). Stated differently, a local kidnapping is not converted into a federal offense simply because the parties traveled out of state and back absent evidence that the victim was transported against her will. *See Hughes*, 716 F.2d at 238 ("[F]ederal policy is not furthered . . . by permitting federal jurisdiction over a wholly intrastate kidnapping simply because during some relevant time period prior to the kidnapping the eventual offender and his victim crossed a state line.").

Consequently, even if the Government could demonstrate that Appellant "held" Elvington after leaving the Lake View Police Department, such conduct would not satisfy the jurisdictional element of 18 U.S.C. § 1201(a)(1). *See id.* ("Such a situation . . . provides no reason for departing from the long established framework of federalism that allocates to the states the primary responsibility for prosecuting kidnapping violations."). As such, Appellant's conviction cannot be sustained by the second or third "holding" because there was no federal jurisdiction over the same.

### c) **The Government misapprehends Appellant's argument concerning *United States v. Applewhaite*.**

Pursuant to 18 U.S.C. § 2119(3),

> Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

In reaching its verdict regarding the carjacking charge, the District Court found that Appellant engaged in three distinct takings: (1) when he forced Elvington to leave her home in her car, (2) in Lake View when Elvington pulled over and Appellant took over the driver's seat, and (3) at the Zion Grocery when Appellant removed Elvington from her car, shot her, and then drove away in her vehicle. (J.A. 714–15). The Government argues that *United States v. Applewhaite*[2] is inapplicable because

---

[2] 195 F.3d 679 (3d Cir. 1999).

9

Appellant's motivation from the outset of his encounter with Elvington was gaining control of her car. However, Appellant does not argue that *Applewhaite* is applicable to all three takings. Rather, Appellant contends *Applewhaite* is applicable to the third and final taking.

In Appellant's opening brief, Appellant argued that there was insufficient evidence regarding the first two "takings" to conclude that, at the time Appellant took control of Elvington's vehicle, he had the intent to seriously harm or kill Elvington. (App.'s Br. at 21–22). *See United States v. Foster*, 507 F.3d 233, 247 (4th Cir. 2007) ("The intent requirement of § 2119 is satisfied when the government proves that, *at the moment the defendant demanded or took control of the vehicle*, the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car." (emphasis added)). Appellant further argued that there was no evidence that Appellant ever threatened Elvington, pointed a weapon at her, or attempted to harm her during the first two takings. As such, Appellant argued the first and second "takings" are insufficient to sustain his carjacking conviction because the Government failed to establish the requisite intent.

The third taking is the only taking in which the Government arguably can establish an intent to cause harm. However, the Government did not demonstrate that Appellant shot Elvington for the purpose of taking her car. Rather, following the shooting, the record demonstrates that Appellant took Elvington's car as an

10

afterthought in order to dispose of it, which he did immediately thereafter. As such, Appellant relies on *Applewhaite* for the proposition that the Government "failed to establish the required nexus between the assault and the [third] taking." 195 F.3d at 685. The Government seemingly recognizes Appellant's motivation to hide or destroy evidence, stating in its brief that, "[b]y that time, [Appellant] knew that he had been tracked to Lake View and that OnStar was contacting the police, . . . so he disposed of Ms. Elvington—the only eyewitness to his crimes—then drove her car within walking distance of his home and ditched it." (Gov't Br. at 38). The Government's assertion suggests that the shooting of Elvington and the subsequent taking of her car were both motivated by an intent to avoid detection and hide evidence, not to gain control of the vehicle. Accordingly, Appellant asserts the third "taking", even when viewed in the light most favorable to the Government, is insufficient to sustain his carjacking conviction.

## VI.   CONCLUSION

For the above reasons, as well as those set forth in Appellant's opening brief, Appellant's conviction and sentence should be vacated and remanded for a new trial.

RESPECTFULLY SUBMITTED, this 20th day of February, 2024.

/s/ Mario A. Pacella
Mario A. Pacella

11

STROM LAW FIRM, LLC
6923 N. Trenholm Rd., Suite 200
Columbia, South Carolina 29206
Tel:   803.252.4800
Fax:   803.252.4801
mpacella@stromlaw.com

*Attorney for Appellant*

12

## CERTIFICATE OF COMPLIANCE

Pursuant to F.R.A.P. 32(a)(5)(A) and (7)(B), undersigned counsel hereby certifies that this Brief is typed in 14-point Times New Roman proportionally spaced font; and this Brief complies with the type-volume limitations of F.R.A.P. 32(a)(7)(B)(ii), containing 2,638 words, excluding those sections of the Brief that do not count towards that limitation, which was determined by the Microsoft Word program used to prepare this Brief.

                                          Respectfully submitted,

                                          /s/Mario A. Pacella
                                          Mario A. Pacella
                                          STROM LAW FIRM, LLC
                                          6923 N. Trenholm Rd., Suite 200
                                          Columbia, South Carolina 29206
                                          Tel:   803.252.4800
                                          Fax:   803.252.4801
                                          mpacella@stromlaw.com

                                          *Attorney for Appellant*

February 20, 2024

## CERTIFICATE OF SERVICE

This is to certify that I have this day caused a true and correct copy of the foregoing **Brief of Appellant Dominique Brand** to be served via ECF notification upon the following:

        Katie Stoughton
        U.S. Attorney's Office
        District of South Carolina
        1441 Main St., Suite 500
        Columbia, South Carolina 29201
        *Counsel for the United States*

        /s/Mario A. Pacella
        Mario A. Pacella
        STROM LAW FIRM, LLC
        6923 N. Trenholm Rd., Suite 200
        Columbia, South Carolina 29206
        Tel:   803.252.4800
        Fax:  803.252.4801
        mpacella@stromlaw.com

        *Attorney for Appellant*

February 20, 2024